IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-03127-NYW

RICK EDWARD MURPHY,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Under 5 U.S.C. § 301 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), federal agencies may adopt procedures regulating their employees' ability to testify in court about work-related matters. Those regulations are commonly referred to as "*Touhy* regulations," and a request for information or testimony under those regulations is known as a "*Touhy* request." *See Frank v. FDA*, 998 F. Supp. 2d 596, 602 (E.D. Mich. 2014).

In this case, Plaintiff Rick Edward Murphy ("Plaintiff" or "Mr. Murphy") appeals the denial of his *Touhy* request seeking trial testimony from mental health providers working for the United States Department of Veterans Affairs (the "VA"). *See* [Doc. 11]. The Court has reviewed the Parties' briefs and the administrative record and concludes that oral argument would not materially assist in the resolution of this appeal. For the reasons set forth below, this matter is **REMANDED** to the VA for further consideration of Plaintiff's *Touhy* request.

## BACKGROUND

Mr. Murphy is charged in state court "with various crimes, including Kidnapping in the first degree." [Doc. 9-1 at 3]. He has pleaded not guilty to those charges by reason of insanity. [*Id.*]. Mr. Murphy's trial on those charges is set to begin September 23, 2025. [Doc. 11 at ¶ 8].

On October 28, 2024, Mr. Murphy's submitted a *Touhy* request to the VA for trial testimony from 20 different VA mental health providers who have treated him. [Doc. 9-1 at 1–4]; *see also* [*id.* at 5–24 (the trial subpoenas)]. In the request, counsel for Mr. Murphy explained that Mr. Murphy "seeks the testimony of these various VA doctors and therapists to help explain to the jury Mr. Murphy's mental health condition as they observed it." [*Id.* at 3]. He also told the VA that the State of Colorado would be offering testimony about Mr. Murphy's medical records and asserted that it would "be necessary at trial for the treating VA doctors and therapists to explain their findings and observations for Mr. Murphy's mental health to the jury," otherwise the jury would "*only* hear" the State evaluator's recount. [*Id.* at 4 (emphasis added)].

The VA denied the *Touhy* request. [*Id.* at 26–27]. First, it "noted that all the health care providers . . . charted their care and treatment of [Mr. Murphy] in his VA medical records and that the medical record is likely the most reliable source of fact information regarding the care received." [*Id.* at 26]. The VA asserted that it was "not convinced that the health care providers maintain relevant fact information beyond what is already recorded in [Mr. Murphy's] medical records and available to the parties." [*Id.*]. It also noted that "[f]ourteen of the health care providers . . . have not treated [Mr. Murphy] in more than five years," and that of the remaining six providers, one last treated Mr. Murphy

2

in July 2022, three last treated him in October 2022, and the remaining two last treated him in November 2022. [*Id.*].

Then, the VA asserted that "[p]roducing the currently employed VA health care providers for trial testimony" in Mr. Murphy's criminal case would be burdensome because it would "remov[e] them from patient care for more than a full workday," considering the time required to review medical records, travel to and from court, and testify, which "would result in the delay and/or rescheduling of a large number of veteran clinic appointments." [*Id.*]. Finally, the VA stated that it was "concerned that the testimony sought . . . will include expert or opinion testimony, which is prohibited by 38 C.F.R. § 14.808," and the VA "recommend[ed] that defense counsel utilize and rely upon its qualified non-VA medical expert" to testify about Mr. Murphy's medical records. [*Id.*].

Mr. Murphy filed the instant action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, for judicial review of the VA's denial of his *Touhy* request. [Doc. 1 at 1]. He contends that (1) the VA's denial was arbitrary and capricious; (2) the denial was in excess of the VA's statutory authority; and (3) the denial violated his constitutional rights. [Doc. 11 at 1]. The matter is fully briefed, [Doc. 12; Doc. 14], and ripe for review.

## STANDARD OF REVIEW

Under the APA, a district court may set aside a federal agency's decision for a number of reasons, including that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," was "contrary to constitutional right, power, privilege, or immunity," or was rendered in excess of the agency's statutory authority. 5 U.S.C. § 706(2)(A)–(C).

Agency actions are presumed valid. *W. Watersheds Project v. Haaland*, 69 F.4th

3

689, 700 (10th Cir. 2023). The arbitrary and capricious standard is "'very deferential' to the agency's determination, and a presumption of validity attaches to the agency action such that the burden of proof rests with the party challenging it." *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (quoting *W. Watersheds Project v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1273 (10th Cir. 2013)). An agency's action is arbitrary and capricious if the agency

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or if the action is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Defs. of Wildlife v. U.S. Forest Serv.*, 94 F.4th 1210, 1220 (10th Cir. 2024) (quotation omitted).

Except in extremely limited circumstances, judicial review of agency action is limited to the documents and materials presented to the agency. *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1160 (10th Cir. 2022). And in reviewing the agency's decision, the Court considers "only the agency's stated reasons for its decision," disregarding any post hoc rationalizations for the decision. *Defs. of Wildlife*, 94 F.4th at 1220. In conducting its review, the Court is mindful that it cannot substitute its judgment for that of the agency. *Fabrizius v. Dep't of Agric.*, 129 F.4th 1226, 1236 (10th Cir. 2025).

## ANALYSIS

### I.   The VA's *Touhy* Regulations

"[A] federal agency may adopt procedures—known as *Touhy* regulations—for responding to requests for testimony or documents." *Rhoads v. U.S. Dep't of Veterans*

*Affs.*, 242 F. Supp. 3d 985, 992 (E.D. Cal. 2017) (citing 5 U.S.C. § 301). The VA's *Touhy* regulations, which are set forth in 38 C.F.R. §§ 14.800–14.810, require prior written approval from the VA before VA personnel may testify in legal proceedings about their work. 38 C.F.R. §§ 14.803(a), 14.806. "In determining whether to authorize testimony . . ., the determining official will consider the effect in this case, as well as in future cases generally, . . . which testifying . . . will have on the ability of the agency or VA personnel to perform their official duties." *Id.* § 14.803(a).

The regulations provide that the determining official "shall consider the following types of factors" in deciding whether to permit or not permit testimony:

(a)  The need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA personnel for conducting their official duties concerning servicing the Nation's veteran population;

(b)  How the testimony or production of records would assist VA in performing its statutory duties;

(c)  Whether the disclosure of the records or presentation of testimony is necessary to prevent the perpetration of fraud or other injustice in the matter in question;

(d)  Whether the demand or request is unduly burdensome or otherwise inappropriate under the applicable court or administrative rules;

(e)  Whether the testimony or production of records, including release in camera, is appropriate or necessary under the rules of procedure governing the case or matter in which the demand or request arose, or under the relevant substantive law concerning privilege;

(f)  Whether the testimony or production of records would violate a statute, executive order, regulation or directive. . . .;

(g)  Whether the testimony or production of records, except when in camera and necessary to assert a claim of privilege, would reveal information properly classified pursuant to applicable statutes or Executive Orders;

    (h)    Whether the testimony would interfere with ongoing law enforcement proceedings, compromise constitutional rights, compromise national security interests, hamper VA or private health care research activities, reveal sensitive patient or beneficiary information, interfere with patient care, disclose trade secrets or similarly confidential commercial or financial information or otherwise be inappropriate under the circumstances.

    (i)    Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government favoring one litigant over another;

    (j)    Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government endorsing or supporting a position advocated by a party to the proceeding;

    (k)    The need to prevent the public's possible misconstruction of variances between personal opinions of VA personnel and VA or Federal policy.

    (l)    The need to minimize VA's possible involvement in issues unrelated to its mission;

    (m)    Whether the demand or request is within the authority of the party making it;

    (n)    Whether the demand or request is sufficiently specific to be answered;

    (o)    Other matters or concerns presented for consideration in making the decision.

*Id.* § 14.804.

## II. The VA's Decision

In arguing that the VA's decision was arbitrary and capricious, Mr. Murphy observes that the VA "does not point to any specific factor" set forth in the regulations "that would restrict the testimony sought," but only "generally claims the testimony sought would be an undue burden on the agency," which Mr. Murphy construes as encompassing 38 C.F.R. § 14.804(d). [Doc. 11 at 13]. He challenges the VA's reliance on 38 C.F.R. § 14.804(d), arguing that any inconvenience caused by permitting the providers'

testimony is outweighed by his constitutional right to compulsory process and his interest in presenting a full defense. [*Id.* at 14–15]. He also argues that because the VA failed to expressly address any other factors, the VA must have failed to consider those factors, and that consideration all of the relevant circumstances weighs in favor of permitting the requested testimony. [*Id.* at 13–14].

The VA responds that its decision was neither arbitrary nor capricious. [Doc. 12 at 22]. In its view, the denial "rested on four points": (1) Mr. Murphy has access to his own medical records, which were "likely the most reliable source of information"; (2) 14 of the 20 named providers had not treated Mr. Murphy for at least five years; (3) the requested testimony would require the current VA providers to take a day off of work, which "would require delay and rescheduling many veterans' appointments"; and (4) the VA regulations prohibit VA employees from providing expert testimony, and the VA decisionmaker "was also under the impression that Mr. Murphy had his own expert." [*Id.*]. The VA contends that "having 20 VA healthcare providers testify . . . when Mr. Murphy had all of his medical record[s] and apparently had his own expert witness, [would be] overly burdensome given the VA's mission." [*Id.* at 23–24 (footnote omitted)].

A mentioned above, an agency's action is arbitrary and capricious if the agency entirely failed to consider an important aspect of the problem or offered an explanation for its decision that runs counter to the evidence before the agency. *Defs. of Wildlife*, 94 F.4th at 1220. Here, the VA did both, and remand of this matter is therefore appropriate.

The Court first reviews the VA's stated bases for its denial. As Plaintiff points out, the VA did not expressly identify any factors on which it relied, but appeared to rely on 38 C.F.R. § 14.084(d) in concluding that permitting the testimony would be overly

7

burdensome.  [Doc. 9-1 at 25–27].  Specifically, the VA stated that producing the currently employed VA providers for trial would "remov[e] them from patient care for more than a full workday," which would "result in the delay and/or rescheduling of a large number of veteran clinic appointments."  [*Id.* at 26].  However, this blanket explanation fails to address how any one provider's specific "patient load, schedule, or other official duties would be hampered by complying with Plaintiff['s] request."  *OhioHealth Corp. v. U.S. Dep't of Veteran Affs.*, No. 2:14-cv-00292, 2014 WL 4660092, at *6 (S.D. Ohio Sept. 17, 2014).  While the Court must defer to the VA's judgment with respect to "the time and effort involved in preparing the employees for . . . testimony and how that time commitment might hamper their ability to fulfill their duties," *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 459 (E.D.N.Y. 2011), the fact that producing the providers to testify at trial would be inconvenient or burdensome "cannot overcome the public's right to the type of 'every man's evidence' in issue here," because "[i]f it did, . . . every agency could claim an employee is 'too busy' to participate in discovery [or provide testimony] and the requesting party would have little, if any, room to refute this contention for the Court to undertake meaningful review," *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-02885, 2020 WL 5994266, at *6 (N.D. Fla. Oct. 9, 2020).[1]  Moreover, the VA did not explain how this rationale applies to the providers no longer working for the VA.  *See* [Doc. 9-1 at 25–27].[2]

---

[1] The Court does not consider the VA's argument that, due to the nature of the charges, "it was reasonable for the VA to infer that the trial would last many days, and thus that the subpoenas were for an uncertain length of time."  [Doc. 12 at 25].  The VA did not expressly make any such inference in its letter, *see* [Doc. 9-1 at 25–27], and the Court cannot consider this post hoc rationale for the VA's decision, *Defs. of Wildlife*, 94 F.4th at 1220.

[2] The VA's *Touhy* denial notes that seven of the providers "have retired from or otherwise

The problem with the VA's almost complete reliance on the potential burden imposed by the request is compounded by its apparent failure to consider other relevant factors, such as "[w]hether the . . . presentation of testimony is necessary to prevent . . . injustice in the matter in question." 38 C.F.R. § 14.804(c). Mr. Murphy informed the VA in his *Touhy* request that (1) he had been charged with multiple crimes, including first-degree kidnapping; (2) the kidnapping charge "carries with it the possibility of a life sentence"; and (3) the VA providers' testimony was "necessary" to his defense because without it, the only explanation for the medical records would be provided by a prosecution witness, and there would be no testimony from Mr. Murphy's treating providers. [Doc. 9-1 at 4]. The VA responded that it was "not convinced that the health care providers maintain relevant fact information beyond what is already recorded in [Mr. Murphy's] medical records," reasoning that the records themselves were "likely the most reliable source of fact information regarding the care [Mr. Murphy] received." [*Id.* at 26].

However, it does not take a seasoned trial attorney to appreciate the difference in utility between direct testimony from Mr. Murphy's treating physicians about Mr. Murphy's condition at or around the time of the alleged offense and a voluminous stack of unexplained medical records. Moreover, the VA's reasoning also ignores Mr. Murphy's justification for his *Touhy* request, which was "to help *explain* to the jury Mr. Murphy's mental health condition as [the providers] observed it." [*Id.* at 3 (emphasis added)]. If Mr. Murphy was exclusively treated by VA doctors at the time period in question—which is

---

moved on from VA service" and two others were "now working at VA health care facilities outside of Colorado." [Doc. 9-1 at 26]. The VA's *Touhy* regulations apply to former VA employees. *See* 38 C.F.R. § 14.802(c). No Party expressly raises arguments specific to the former VA employees, and the VA's denial does not distinguish between former and current employees. *See* [Doc. 9-1 at 27].

9

not entirely clear in the record, but implied in it, see [*id.* at 4 (Mr. Murphy's counsel stating that without VA provider testimony, "the jury will not be able to hear from doctors and therapists who treated Mr. Murphy first-hand")]—then he "cannot merely seek [testimony] from another medical professional not associated with the VA," *Rhoads*, 242 F. Supp. 3d at 997; *see also Schroeder v. U.S. Dep't of Veterans Affs.*, 673 F. Supp. 3d 1204, 1227 (D. Kan. 2023) (concluding that the VA's denial of *Touhy* discovery requests violated the APA because the VA failed to consider that the requesting party was unable to procure the requested information elsewhere).

"[T]he rights of a defendant in a criminal case to full public presentation of the facts are even greater than are the rights of a party in a civil suit." *United States v. Feeney*, 501 F. Supp. 1337, 1341 (D. Colo. 1980). Here, the success of Mr. Murphy's insanity defense turns on whether the jury determines he "was so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act" and whether he "suffered from a condition of mind caused by a mental disease or defect that prevented him . . . from forming a culpable mental state that is an essential element of a crime charged." Colo. Jury Instr., Criminal I:01. Having Mr. Murphy's treating providers testify as to their percipient knowledge of his mental state at or around the time he allegedly commissioned the act may be critical to his defense.[3] While the Court does not reach Mr. Murphy's constitutional argument,[4] there is simply no

---

[3] To the extent the VA stated in its denial letter that "fourteen of the health care providers . . . have not treated [Mr. Murphy] in more than five years," [Doc. 9-1 at 26], the Court cannot make an individualized determination as to the utility of any one provider's testimony because the VA did not make any individualized determination for any of the providers, *see* [*id.* at 25–27].

[4] "It is a fundamental rule of judicial restraint" that courts "will not reach constitutional questions in advance of the necessity of deciding them." *Three Affiliated Tribes of Fort*

indication that the VA considered the potential implications of denying Mr. Murphy the ability to present testimony from VA providers in his criminal defense.  In this way, the VA "failed to consider an important aspect of the problem."  *Defs. of Wildlife*, 94 F.4th at 1220; *see also United States v. Fleet Mgmt. Ltd.*, No. 07-cr-00279, 2008 WL 1848102, at *4 (E.D. Pa. Apr. 24, 2008) (finding it an abuse of discretion for an agency to refuse to produce witnesses the defendants "identified as critical to their defense" in criminal case); *OhioHealth Corp.*, 2014 WL 4660092, at *6 (because the VA "completely ignored the factor on which [the plaintiffs'] *Touhy* requests and affidavits center[ed]," including their need to "adequately defend themselves," the VA failed to consider an important aspect of the problem).

The VA's failure to consider an important aspect of the problem is directly tied to another issue in the VA's denial—the explanation for its decision contradicted the evidence before it.  *Defs. of Wildlife*, 94 F.4th at 1220.  The VA's denial letter states that the VA "recommends that defense counsel utilize and rely upon its qualified non-VA medical expert to . . . testify regarding the relevant portions of [Mr. Murphy's] medical records."  [Doc. 9-1 at 26].  In its response brief, the VA contends that the VA decisionmaker "inferred" that Mr. Murphy had retained an expert and that this was "a reasonable inference given the ubiquity of experts in trials, the seriousness of the charges, and the provision under Colorado law that requires the state court to order that an expert for a defendant claiming NGRI be given reasonable opportunity for an examination."  [Doc. 12 at 24–25 n.4].

*Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 157 (1984); *Bandimere v. Sec. & Exch. Comm'n*, 844 F.3d 1168, 1171 (10th Cir. 2016) ("Federal courts avoid unnecessary adjudication of constitutional issues.").

11

No part of the VA's explanation for the decisionmaker's erroneous assumption is included in the VA's denial letter, *see* [Doc. 9-1 at 25–27], and the Court cannot consider this post hoc rationale in its review,[5] *Defs. of Wildlife*, 94 F.4th at 1220.  Moreover, the VA's apparent belief that Mr. Murphy had retained his own expert (as framed by the VA on appeal) is directly contrary to Mr. Murphy's *Touhy* request, which states:  "It will be necessary at trial for the treating VA doctors and therapists to explain their findings and observations of Mr. Murphy's mental health to the jury.  *Otherwise*, the jury will *only* hear [the state evaluator] recount her review of the records."  [Doc. 9-1 at 4 (emphasis added)].  Because the VA drew conclusions that were unsupported by, and counter to, the evidence before it, the VA's denial was arbitrary and capricious.  *Rhoads*, 242 F. Supp. 3d at 997; *see also Ceroni v. 4Front Engineered Sols.*, Inc., 793 F. Supp. 2d 1268, 1279 (D. Colo. 2011) (finding that agency's failure to comply with discovery requests was arbitrary and capricious where, among other errors, the agency's "suggestion that the [requested] evidence [was] available through some other source [was] unsupported and obviously incorrect").

For these reasons, the Court finds that the VA's blanket denial of Mr. Murphy's *Touhy* request was arbitrary and capricious.  "[T]he proper course . . . is to remand to the agency for additional investigation or explanation," as "[t]he reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."  *Fla. Power & Light Co. v. Lorion*,

---

[5] Similarly, the Court does not consider the VA's statement that Mr. Murphy designated the VA providers as expert witnesses in his criminal case, which the VA admits was "not part of the Administrative Record."  *See* [Doc. 12 at 26 n.5]; *see also Rocky Mountain Peace & Just. Ctr.*, 40 F.4th at 1160.

470 U.S. 729, 744 (1985).  Accordingly, this matter is remanded back to the VA for further consideration of Mr. Murphy's *Touhy* request.  *See OhioHealth Corp.*, 2014 WL 4660092, at *7; *Rhoads*, 242 F. Supp. 3d at 997.[6]

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    This matter is **REMANDED** to the Department of Veterans Affairs for further consideration of Plaintiff's *Touhy* request; and

(2)    The Clerk of Court is directed to close this case.

DATED:  June 16, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[6] Mr. Murphy requests that the Court "order the VA providers to comply with the state court subpoena." [Doc. 11 at 17].  But as explained above, remand for further consideration is the appropriate action to take.  *Fla. Power & Light Co.*, 470 U.S. at 744. He also requests that the Court "[o]rder the VA to pay his attorney's fees in bringing this action pursuant to 28 U.S.C. § 2412." [Doc. 11 at 17].  However, this request is not accompanied by any supporting argument or authority, and in any event, the Local Rules set forth specific procedures for requesting attorney's fees.  *See* D.C.COLO.LCivR 54.3; *see also* D.C.COLO.LCivR 1.1(c) (explaining that the Local Civil Rules apply in all civil actions, except as specifically addressed in the AP Rules).